IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JESUS SANDOVAL-MOSCHETTO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | **EP-11-CV-199-KC** |
| | § | **EP-09-CR-892(1)-KC** |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**ORDER**

On this day, the Court considered Petitioner Jesus Sandoval-Moschetto's Motion Under

28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody

("Motion"), ECF No. 222.  For the reasons set forth herein, the Motion is **DENIED**.

**I.     BACKGROUND**

Starting in late 2008, Jesus Sandoval-Moschetto ("Sandoval") engaged in a conspiracy to

sell methamphetamine.  *See* Plea Agreement 8-18, ECF No. 184.  In late 2008, undercover law

enforcement agents, acting on an informant's tip, attempted to buy large quantities of heroin and

methamphetamine in the El Paso, Texas area.  *See id*. at 8.  A series of conversations with others

involved in the conspiracy led the agents to meet with Sandoval on February 25, 2009.  *Id*. at 13.

During this meeting, Sandoval offered to sell the agents fifty pounds of methamphetamine at

$16,000 per pound.  *Id*. at 16-17.  The next day, the agents called Sandoval and set a time and

location for the sale, which was to occur later that same day.  *Id.* at 15.  Later that day, at a

different location, Sandoval met with the agents.  *Id*.  However, he was only able to procure ten

pounds of methamphetamine.  *Id*.  Because of this deficit, Sandoval reduced the price to $15,000

per pound.  *Id*.  The agents agreed to these terms.  *See id*.  Sandoval then completed the

transaction and sold 4,346 grams—that is, 9.58 pounds or 4.3 kilograms—of methamphetamine

with a purity of 100 percent to the agents.  *Id.* at 18.  Sandoval was immediately arrested.  *Id*. at

15.

      On March 20, 2009, in the Western District of Texas, El Paso Division, a grand jury

returned a two-count indictment against Sandoval.  Indictment, ECF No. 20.  In the Indictment,

Sandoval was charged with conspiracy to possess with intent to distribute more than fifty grams

of methamphetamine and possession with intent to distribute more than fifty grams of

methamphetamine in violation of 21 U.S.C. §§ 846 and 841.  *See id*.  The Indictment was later

amended with a superseding indictment, which added an additional co-defendant and is the

operative indictment in this case.  Superseding Indictment, ECF No. 33.  The Superseding

Indictment incorrectly numbered both counts in the indictment as "COUNT TWO."  *Id*. at 1-2.

      On August 25, 2009, Sandoval entered into a plea agreement in which he agreed to plead

guilty to the first incorrectly numbered count of the Superseding Indictment—that is, conspiracy

to possess with intent to distribute a controlled substance in violation of § 846.  *See generally*

Plea Agreement, ECF No. 184.  In the plea agreement, Sandoval "voluntarily and knowingly

waive[d] the right to contest [his] sentence in any post-conviction proceeding, including but not

limited to, a proceeding pursuant to 28 U.S.C. § 2255 . . . ."  *See id*. at 4-5.

      That same day, Sandoval entered his guilty plea before the Court.  *See generally* Plea Tr.,

Aug. 25, 2009, ECF No. 212.  At the plea hearing, Sandoval was asked if he was satisfied with

the assistance defense counsel had provided.  *Id*. at 5:14-15.  Sandoval responded in the

affirmative.  *Id*. at 5:16.  Before accepting his plea, the Court warned Sandoval that a plea of

2

guilty might result in adverse immigration consequences.  *Id*. at 6:15-19.  Sandoval

acknowledged these consequences.  *Id*. at 6:20.  The government then proceeded to read a

summary of the evidence in the case.  *Id*. at 15:15-18:17.  The summary indicated that Sandoval

had attempted to sell fifty pounds of methamphetamine.  *Id*. at 16:7-19.  Sandoval agreed in

principle to the summary of the evidence, but objected to the quantity of methamphetamine.  *Id*.

at 19:7-24.  Sandoval's defense counsel clarified that Sandoval "only had 4.3 kilograms of meth.

And that's the amount that was in the transaction.  And [he believes] that, actually, the rest of it

was highly speculative."  *Id*. at 19:8-10.  Defense counsel noted that he did not believe that this

clarification affected the plea deal.  *Id*. at 19:14-16.  Sandoval then stated that he wished to plead

guilty, which the Court accepted as knowing and voluntary.  *Id*. at 21:8-22:15.

The Presentence Investigation Report ("PSI Report"), ECF No. 176, prepared by the

United States Probation Service on October 27, 2009 and revised on March 3, 2010, placed

Sandoval at a total offense level of forty and criminal history category of I.  PSI Report ¶¶ 58,

61.  The corresponding United States Sentencing Commission Guidelines Manual ("Sentencing

Guidelines") range for this offense level and criminal history is between 292 and 365 months of

incarceration.  Sentencing Tr., Apr. 1, 2010, ECF No. 213, 3:1-2; *see* U.S.S.G. Ch.5, Pt. A

("Sentencing Table").  On April 1, 2010, the Court held a sentencing hearing.  *See generally*

Sentencing Tr.  During this hearing, Sandoval sought to reduce his offense level by arguing that

the safety valve adjustment applied.  *Id.* at 3:16-13:22.  The Court did not find this argument

persuasive and based, in part, on the PSI Report, imposed a sentence of 292 months of

incarceration, five years of supervised release, and a $100 special assessment fee.  *Id*. at 14:21-

16:6.

## II.  DISCUSSION

### A.  28 U.S.C. § 2255

After a petitioner has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)).  Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)).  Typically, before a court will grant relief pursuant to § 2255, the petitioner must establish: "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."  *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal.  *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).  When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted.  *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999).  The cause and actual prejudice standard is "significantly

more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589. If the petitioner does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

### B. Sandoval's § 2255 Petition

Sandoval moves for the Court to vacate his sentence pursuant to 28 U.S.C § 2255. *See generally* Mot. In his Memorandum in Support of Motion Filed Under § 2255 of Petitioner ("Memorandum"), Sandoval raises a number of arguments as to why the Court should vacate his sentence. ECF No. 222-1, 2-9. Sandoval's Memorandum frames these arguments in the context of ineffective assistance of counsel. *See id.* Sandoval does not raise cause and actual prejudice, or actual innocence claims. *See id.*

Mindful of Sandoval's pro se status, the Court has liberally read his petition. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir.1985) (explaining liberal construction allows active interpretation of a pro se pleading to encompass any allegation which may raise a claim for federal relief).

Although Sandoval's assertions often bleed into one another, his arguments can be categorized into the following claims: defense counsel's failure to object to drug quantities, defense counsel's failure to object to the base offense level, defense counsel's failure to raise amendment 505, defense counsel's misrepresentation of the plea agreement, defense counsel's failure to secure a safety valve meeting, defense counsel's failure to object to a defective

indictment, defense counsel's failure to discuss immigration consequences, the unreasonableness of Sandoval's sentence, and the Court's failure to clarify the type of methamphetamine sold to law enforcement agents. *See generally* Mem. The Court addresses each in turn.

### C. Ineffective Assistance of Counsel

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To merit relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct.  *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").  In order to obtain relief, a petitioner must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the petitioner must also demonstrate actual prejudice.  *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.  Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").  The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

### 1.  Failure to object to drug quantities

Sandoval argues that defense counsel rendered ineffective assistance because he did not object to the quantity of drugs attributed to Sandoval.  Mem. 2-4.  Sandoval does not articulate when or in what proceeding defense counsel failed to raise this argument.  *See id*.  He argues that "[t]his drug transaction only involved 10 pounds of the drug in question however the Court sentenced Petitioner for 50 pounds."[1]  *Id*. at 4.  In other words, Sandoval appears to argue that defense counsel failed to object at the sentencing to the incorrect quantity of drugs.  Sandoval claims that defense counsel's failure to object to this discrepancy "inflated" his total offense level to forty.  *Id*.

But, because the quantity of drugs attributed to Sandoval was correct, there were no grounds for defense counsel to object.  The Court looked to the PSI Report to determine a fair and reasonable sentence.  *See* Sentencing Tr. 2:24-3:3.  The PSI Report attributed the correct quantity of drugs—that is, the 4.3 kilograms or the approximately ten pounds of methamphetamine that Sandoval actually sold to law enforcement agents.  PSI Report ¶ 42 (holding Sandoval "accountable for the 4,346 grams of actual methamphetamine seized on February 26, 2009").  The PSI Report did not base its calculations on the quantity of drugs that Sandoval offered, but did not actually sell, to law enforcement agents—that is, fifty pounds of methamphetamine.  *See generally id*.  There is no indication that the Court considered any amount other than the 4.3 kilograms at sentencing.  *See generally* Sentencing Tr.  Thus, defense counsel could not reasonably raise an objection to the quantity of drugs attributed to Sandoval at

---

[1] The ten pounds that Sandoval is referencing is the 4,346 grams, or 4.3 kilograms, of methamphetamine that he sold to law enforcement agents. In imperial units, 4,346 grams is roughly 9.58 pounds.  Sandoval appears to round this quantity to ten pounds.

sentencing.  Such an objection would be frivolous. [2]  Counsel's failure to raise a frivolous

objection is not ineffective assistance and is not grounds for relief under § 2255.  *Clark v.

Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective

lawyering, it is the very opposite."); *United States v. Coleman*, 3-97-CR-056-R, 2002 WL

1758179, at *4 (N.D. Tex. July 26, 2002).  Therefore, Sandoval is not entitled to relief under §

2255 for this claim.

### 2.   Failure to object to the base offense level in the PSI Report

Sandoval next argues that defense counsel rendered ineffective assistance because he did

not object to the base offense level in the PSI Report.  *See* Mem 2-4.  The PSI Report assigned

Sandoval a base offense level of thirty-eight, which was adjusted upwards for a total offense

level of forty.  PSI Report ¶¶ 48-58.  As discussed above, Sandoval argues that he was

improperly held accountable for fifty pounds of methamphetamine.  Mem. 2-4.  Because of the

additional amount of methamphetamine, Sandoval claims that his base offense level was a

"miscalculation."  *See id*.  Specifically, Sandoval argues that for the quantity of drugs properly

attributed to him, he should have received a base offense level of thirty-six.  *Id*. at 2.  He appears

to base this argument, in part, on his claim that the amount of methamphetamine that he sold to

law enforcement agents is equivalent in the Sentencing Guidelines to 24,234 kilograms of

marijuana.  *See id*. at 2.  Sandoval argues that defense counsel's failure to object to this

miscalculation during the sentencing hearing is indicative of ineffective of assistance.  *Id*. at 3.

For a claim asserting ineffective assistance of counsel at sentencing, a petitioner

establishes prejudice by demonstrating that the deficient performance of his attorney resulted in

---

[2] Defense counsel did raise this objection when it was proper, at the earlier plea hearing.  During that hearing, defense counsel stated that Sandoval "only had 4.3 kilograms of meth.  And that's the amount that was in the transaction.  And [he believes] that, actually, the rest of it was highly speculative."  Plea Tr. 19:8-10.

an increase in his punishment.  *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).  In other words, a petitioner must show "that but for his counsel's error, his sentence would have been significantly less harsh."  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (per curiam).

Here, defense counsel was correct in not objecting to the base offense level in the PSI Report because the base offense level was accurate.  The PSI Report assigned Sandoval a base offense level of thirty-eight.  PSI Report ¶ 19.  This number was calculated from the Sentencing Guidelines, which assign a base offense level of thirty-eight for violations of § 846 involving "1.5 [kilograms] *or more* Methamphetamine (actual)." U.S.S.G. § 2D1.1(1)  (emphasis added).  The PSI Report expressly noted that it was assigning the base offense level of thirty-eight for "4,346 grams of actual methamphetamine . . . ."  PSI Report ¶ 49.  This is the amount of methamphetamine that Sandoval directly sold to law enforcement agents.  *See* Plea Tr. 19:8-10.  As discussed previously, Sandoval was not held accountable for the fifty pounds that he offered to sell to law enforcement agents.  Because there was no miscalculation of the base offense level, defense counsel did not adversely affect Sandoval's sentence.  *See Glover*, 531 U.S. at 200.  Furthermore, because this argument was frivolous, defense counsel was correct in not raising the argument.[3]  *See Clark*, 19 F.3d at 966.  In sum, defense counsel was proper in not objecting to the base offense level in the PSI Report.

-----

[3] Because Sandoval sold methamphetamine, not marijuana, the Court finds his conversion from units of methamphetamine to units of marijuana to be misplaced.  The Sentencing Guidelines only allow for conversion of one type of drug to another "(1) when the controlled substance involved in the offense is not listed in the Drug Quantity Table, or (2) to obtain an equivalent when a defendant possesses more than one type of controlled substance." *United States v. Salazar*, 961 F.2d 62, 64 (5th Cir. 1992) (citing U.S.S.G § 2D1.1, comment. n. 10).  Here, neither of these scenarios is applicable because methamphetamine is listed in the Drug Quantity Table and Sandoval did not possess more than one type of drug.

But even if the PSI Report had attributed all fifty pounds—that is, 22.7 kilograms—of methamphetamine that Sandoval offered to sell to law enforcement agents, defense counsel was still not ineffective in failing to object to the base offense level in the PSI Report.  In this scenario, Sandoval's base offense level would still be thirty-eight, because 22.7 kilograms is greater than 1.5 kilograms.  *See* U.S.S.G. § 2D1.1(1).  Because the base offense level does not change in this scenario, Sandoval would likely have received the same sentence.  Therefore, because Sandoval did not receive a significantly harsher sentence, there was no ineffective assistance of counsel.  *See Stewart*, 207 F.3d at 751.

Moreover, the Court notes that Sandoval's claim essentially represents a backdoor attempt to challenge the Court's findings of fact and application of certain Sentencing Guidelines provisions.  However, Sandoval voluntarily and knowingly waived his right to contest his sentence in a § 2255 proceeding unless the ineffective assistance of defense counsel resulted in a violation of his constitutional rights.  Plea Agreement 4-5 ("By entering into this plea agreement, and as a term of this plea agreement, the Defendant voluntarily and knowingly waives any right to appeal the sentence on any ground . . . .").  More significantly, claims based on alleged miscalculations or misapplications of the Sentencing Guidelines are not constitutional claims cognizable under § 2255.  *See, e.g.*, *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (explaining misapplications of the Sentencing Guidelines are not cognizable in a § 2255 motion).

In summary, defense counsel was not ineffective in failing to object to the base offense level in the PSI Report.  Such an objection would be unfounded and would not have affected Sandoval's sentence.  Accordingly, Sandoval is not entitled to relief under § 2255 for this claim.

### 3.   Failure to raise amendment 505

Sandoval also challenges his total offense level of forty.  *See* Mem. 5.  Sandoval argues

that amendment 505 to the Sentencing Guidelines caps the maximum base offense level at thirty-

eight for any drug type.  *See id.*; U.S.S.G. App. C, amendment 505 ("Amendment 505").

Sandoval claims that in violation of Amendment 505, the PSI Report "started with the [base]

offense level of [forty]."  *See* Mem. 5.  Sandoval also appears to argue that Amendment 505

prohibits a total offense level greater than thirty-eight.  *See id.*  Because defense counsel failed to

raise these objections, Sandoval claims his counsel offered ineffective assistance.  *See id.*

Amendment 505, which amended § 2D1.1 of the Sentencing Guidelines, caps the base

offense level for possession of "3 [kilograms] or more" of methamphetamine at thirty-eight.  *See*

Amendment 505.  The amendment only affects the base offense level and does not prevent an

upward adjustment from this base offense level.  *See id.*

Sandoval's Amendment 505 argument is not persuasive for a number of reasons.  First,

despite Sandoval's claims, the PSI Report assigned him a base offense level of thirty-eight, not

forty.  PSI Report ¶ 49.  This is in accord with Amendment 505.  *See* Amendment 505.  Second,

to the extent that Sandoval is arguing that Amendment 505 caps his *total* offense level at thirty-

eight, this is inaccurate statement of the law.  Amendment 505 only caps the *base* offense level.

*See* Amendment 505.  Upward adjustments, as in this case, may raise the total offense level

above thirty-eight.  *See United States v. Duque*, 342 F. App'x 49, 50 (5th Cir. 2009) (noting that

Amendment 505 caps the base offense level at thirty-eight but does not prohibit upward or

downward adjustments from the base).  For these reasons, the Amendment 505 argument is

legally frivolous.  Therefore, defense counsel was not ineffective in failing to raise this

argument.  *See Clark*, 19 F.3d at 966.

Additionally, for reasons articulated above, this argument essentially represents a

backdoor attempt to challenge the Court's findings of fact and application of certain Sentencing

Guidelines provisions.  This type of challenge cannot be raised in a § 2255 motion.  *See, e.g.*,

*Williamson*, 183 F.3d at 462.

In total, Sandoval's Amendment 505 argument is frivolous.  Defense counsel was not

ineffective for failing to raise it.  Accordingly, Sandoval is not entitled to relief under § 2255 for

this claim.

### 4.   Plea agreement misrepresentation

Next, Sandoval argues that defense counsel misled him and coerced him into accepting

the Plea Agreement.  Mem. 6.  Sandoval alleges that defense counsel advised him that he would

receive the safety valve adjustment.  *Id*.  The safety valve is a statutory provision that instructs a

trial court to impose a sentence "without regard to any statutory minimum sentence," if the

petitioner meets certain conditions.  U.S.S.G. § 5C1.2.  However, Sandoval did not receive the

safety valve adjustment because of his leadership role in the conspiracy.  PSI Report ¶ 51.

Sandoval maintains that he "would not have pled guilty if he had known he would not get the

[s]afety [v]alve."  Mem. 7.

In order to establish prejudice arising from counsel's ineffective assistance during plea

negotiations or the plea itself, a petitioner must show that, absent his counsel's deficiencies, he

would not have pleaded guilty and would instead have proceeded to trial.  *See United States v.*

*Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Thus, "[e]ven where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary.  In such a case there is no actual and substantial disadvantage to the defense."  *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994) (quoting *United States v. Diaz*, 733 F.2d 371, 376 (5th Cir. 1984)) (internal quotations omitted).[4]

A clear and unambiguous plea agreement is afforded great evidentiary weight.  *United States v. Abrea*, 30 F.3d 29, 32 (5th Cir. 1994); *see also United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002) (stating that a court may "give great weight to the defendant's statements at the plea colloquy").  Indeed, sworn statements in open court are presumed to be true.  *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) ("It is well established that '[s]olemn declarations in open court carry a strong presumption of verity.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Thus, a petitioner typically may not recant sworn testimony.  *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998); *Walters v. United States*, 3:09-CV-903-N, 2009 WL 3816472, at *2 (N.D. Tex. Nov. 12, 2009) (dismissing a § 2255 claim of inducement to plead guilty where petitioner's sworn statements contradicted his later claims of coercion).

At the plea hearing, the Court explained that the decision to plead guilty was entirely voluntary and that defense counsel could not guarantee any sentence.  Sandoval acknowledged this and proceeded to plead guilty:

> THE COURT: So the first thing I want to tell you, Mr. Sandoval, is that you don't have to plead guilty here this morning . . . . Do you understand that?
> . . .
> DEFENDANT SANDOVAL-MOSCHETTO: Yes, Your Honor.

---

[4] The United States Supreme Court's recent decisions in *Lafler v. Cooper*, --- U.S. ----, 132 S.Ct. 1376 (2012) and *Missouri v. Frye*, --- U.S. ----, 132 S.Ct. 1399 (2012) are not applicable in this case.  First, this case is factually different because Sandoval, unlike the petitioners in *Frye* and *Cooper*, did not turn down a plea agreement.  Second, the United States Court of Appeals for the Fifth Circuit has found that neither decision is retroactive.  *In re King*, 697 F.3d 1189, 1189 (5th Cir. 2012).

. . .

If you don't want to plead guilty, you don't have to plead guilty.  You shouldn't plead guilty in this case unless that's what you really want to do . . . . Do you understand that, Mr. Sandoval?

. . .

DEFENDANT SANDOVAL-MOSCHETTO: Yes, Your Honor.

. . .

THE COURT: I'm explaining all of that to you because what I really want you to understand, Mr. Sandoval, is as you stand here about ready to enter a plea in your case, nobody can promise you or guarantee you a particular sentence.  The best your attorney can do, the best anybody can do is explain how the sentencing guidelines work and some of the factors I can look at for the purposes of sentencing.  But nobody can promise you or guarantee you a particular sentence in your case.  Do you understand that, Mr. Sandoval?

. . .

DEFENDANT SANDOVAL-MOSCHETTO: Yes, Your Honor.

Plea Tr. 3:20-24, 4:11-22, 11:23-12:5.

The only evidence that Sandoval offers to contradict these sworn statements are his conclusory statements, in the Memorandum, that counsel misled him.[5]  *See* Mem. 6.  But, "'[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.'"  *See United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) (quoting *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998)).  Moreover, "when a § 2255 movant makes allegations which conflict with his sworn testimony at his plea hearing, he must provide an 'independent indicia of the likely merit of [the] allegations, typically in the form of one or more affidavits from reliable third parties.'"  *Comer v. United States*, 3:09-CV-1261-N-BH, 2009 WL 5033924, at *7 (N.D. Tex. Dec. 18, 2009) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).  Sandoval has not provided any such independent indicia of coercion.  He has only submitted the Memorandum that he authored.

---

[5] In juxtaposition, the evidence offered by the government confirms these sworn statements.  In an affidavit provided by the government, defense counsel states that while he may have discussed the range of possible sentences, he never represented to Sandoval "that he would get a certain sentence . . . ."  Exhibit E, ECF No. 226-5.

Therefore, Sandoval cannot overcome his sworn statements.  Sandoval has not established that counsel misled him or coerced him into accepting the Plea Agreement.  *See, e.g.*, *Barajas-Sanchez v. United States*, 3:11-CV-3226-K, 2012 WL 6049008, at *3 (N.D. Tex. Dec. 4, 2012) (also dismissing a § 2255 claim of inducement to plead guilty where the petitioner did not offer evidence overcoming his sworn statements).  Because Sandoval was not prejudiced, defense counsel did not render ineffective assistance.  *See Scott*, 37 F.3d at 210.  Accordingly, Sandoval is not entitled to relief under § 2255 for this claim.

### 5.  Failure to secure a safety valve meeting

Sandoval also claims that defense counsel's assistance was deficient because defense counsel failed to arrange a meeting between Sandoval and the government to discuss the safety valve adjustment.  Mem. 6-7.  Sandoval states that he was never given the opportunity to meet with the government to "tell [his] side of the story which would have opened eyes and given [the government] the information they needed in order to give [him the safety valve] [d]eparture."  *Id.* at 6.

This claim is disputed by defense counsel, who notes in an affidavit that, "Mr. Sandoval did debrief with agents of the USA on August 23, 2009 for safety valve purposes.  As a result of this meeting, I believe that Mr. Sandoval qualified for safety valve adjustment except for the fact that he was found by the Court to be a manager/organizer."  Exhibit E, ECF No. 226-5.  This statement is consistent with Sandoval's own statement, in his reply to the Motion, in which he states "[c]ounsel advised [me that I] would get the [s]afety [v]alve and [I] was debriefed for that purpose."  Pet'r's Reply ("Reply") 2, ECF No. 227.  As such, it appears that Sandoval's claim is without a factual basis.

But even if defense counsel did fail to secure a meeting with the government, defense counsel was not ineffective because Sandoval was not prejudiced.  For the safety valve adjustment to apply, all of the following five conditions must be met:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

Because all five conditions must be met for the safety valve adjustment to apply, there is no prejudice—and no ineffective assistance of counsel—if the petitioner would not qualify for the safety valve adjustment for a reason unrelated to counsel's performance in securing the safety valve adjustment.  *See United States v. Booty*, 07-182, 2011 WL 4381581, at *1-2 (E.D. La. Sept. 20, 2011) (finding no prejudice even if counsel had failed to prepare his client to debrief because the client played a leadership role and thus did not qualify for the safety adjustment); *United States v. Saldana-Salazar*, C-04-235, 2006 WL 925089, at *4 (S.D. Tex. Apr. 6, 2006) (finding that prejudice could not be established when one of the safety valve adjustment factors was not applicable).

Whether or not Sandoval was given the opportunity to debrief and fulfill the fifth condition is irrelevant because the Court found that the fourth condition—non-leadership—did not apply in this case.  Sentencing Tr. 7:22-8:5.  The PSI Report recommended that Sandoval be denied the safety valve adjustment because he was a "manager/supervisor" in the conspiracy to sell methamphetamine.  PSI Report ¶ 51.  This is the same reason that the Court denied the safety valve adjustment.  Specifically, the Court found Sandoval's ability to negotiate the price and delivery point for the 4.3 kilograms of methamphetamine that he sold to law enforcement agents indicative of his leadership.[6]  Sentencing Tr. 7:22-8:5.  Thus Sandoval cannot show prejudice— that is, that he would have been sentenced differently had he been able to debrief with the government—since he independently did not qualify for the safety valve adjustment due to his leadership role.  *See Booty*, 2011 WL 4381581, at *1-2.

Because there was no prejudice from failing to secure a safety valve meeting, defense counsel did not render ineffective assistance.  *See Scott*, 37 F.3d at 210.  Accordingly, Sandoval is not entitled to relief under § 2255 for this claim.

### 6.  Failure to object to defective indictment

Sandoval argues that defense counsel was ineffective for failing to challenge a defect in the indictment.  Mem. 10.  Specifically, the Superseding Indictment incorrectly numbered both counts as "COUNT TWO."  Superseding Indictment 1.

This typographical error is not grounds for relief under § 2255 because it did not result in prejudice.  *See Gov't of Canal Zone v. Green C.*, 521 F.2d 241, 242 (5th Cir. 1975) (finding that

---

[6] In his Reply, Sandoval contests the Court's determination that he played a leadership role.  *See* Reply 2-3.  However, this argument is not cognizable under § 2255 because it could have been raised on direct appeal.  *See United States v. Balderas*, 56 F.3d 1386, at *1 (5th Cir. 1995) (per curiam) (rejecting a § 2255 motion challenging a court's finding of a leadership role because the argument could have been brought on direct appeal).

a typographical error that did not result in prejudice was not grounds for an ineffective assistance of counsel claim).  To show prejudice, Sandoval would need to show that the typographical error resulted in confusion.  *See United States v. Johnson*, 713 F. Supp. 2d 595, 615 (E.D. La. 2010); *Green C.* 521 F.2d at 242 (noting that typographical error was corrected in the arraignment, preliminary hearing, and testimony at trial).  In this case, there was no confusion about what the Superseding Indictment charged Sandoval with.  For example, the Plea Agreement specifically noted that Sandoval would "plead guilty to the First Count of the Superseding Indictment, which is mistakenly entitled Count Two of the Superseding Indictment . . . ."  Plea Agreement 1.  Additionally, the Court resolved any lingering confusion when it asked Sandoval if he wished to enter "a plea to the offense to Count I of a mislabeled indictment . . . ."  Plea Tr. 2:11-12.  In response, Sandoval stated "[y]es, Your Honor."  *Id.* at 2:15.  Unsurprisingly, Sandoval makes no claim that he was confused or otherwise prejudiced by the typographical error.  Because there was no prejudice, Sandoval cannot claim that defense counsel was ineffective in failing to object to the typographical error.  *See Scott*, 37 F.3d at 210.  Accordingly, Sandoval is not entitled to relief under § 2255 for this claim.

### 7.   Failure to discuss immigration consequences

In one line of the Memorandum, Sandoval states that defense counsel "never mentioned the consequences of deportation and this is prejudice under the *Strickland* Standard. . . ."  *See* Mem. 10.  This is the only mention of immigration consequences in Sandoval's Memorandum.  *See generally* Mem.

Recently, in 2010, the United States Supreme Court held that counsel's failure to advise a client of the immigration consequences of a guilty plea is subject to the *Strickland* two-prong

test. *Padilla v. Kentucky*, --- U.S. ----, 130 S. Ct. 1473, 1482 (2010).[7]  The Court held that the failure to warn a client as to whether a plea carries a risk of deportation violates, per se, the first prong of the *Strickland* test.  *Id.* at 1482-86.  But a violation of the second prong of the *Strickland* test must still be demonstrated in order to show ineffective assistance of counsel.  *See id*. at 1483-84.  Thus the relevant inquiry, when counsel fails to provide an appropriate immigration warning, is whether it is reasonably likely that the client would have pleaded not guilty if informed of the adverse immigration consequences.  *See id*. at 1482.

In this case, Sandoval maintains that defense counsel failed to warn him of the adverse immigration consequences of his guilty plea.  *See* Mem. 10.  But even if defense counsel did not warn Sandoval about these consequences, Sandoval was not prejudiced by this failure to warn for a number of reasons.

First, Sandoval never argues or otherwise indicates he would have pleaded not guilty if he were informed of the immigration consequences of a guilty plea.  *See generally* Mem.

Second, the evidence in this case was so overwhelming that Sandoval would have likely been inclined to accept the plea regardless of immigration consequences.  The case against Sandoval was robust: Sandoval had personally sold law enforcement agents 4.3 kilograms of methamphetamine.  Plea Agreement 17.  Sandoval did not appear to have a viable defense against the eyewitness and physical evidence.  This imbalance suggests that Sandoval would have pleaded guilty even if warned of the adverse immigration consequences.  *See Zapata-Banda v. United States*, B:10-256, 2011 WL 1113586, at *10 (S.D. Tex. Mar. 7, 2011) (finding that

---

[7] The *Padilla* decision is relevant to this case.  *Padilla* was decided on March 31, 2010.  *See generally* 130 S. Ct. at 1473.  The *Padilla* decision applied to all cases then pending that had yet to become final.  *See United States v. Amer*, 681 F.3d 211, 212 (5th Cir. 2012) (deciding the issue of whether *Padilla* also applied retroactively to convictions that became final before Padilla was decided).  Because Sandoval pleaded guilty on the next day, April 1, 2010, his case was not final when *Padilla* was decided.

overwhelming evidence and the lack of a viable defense indicate, in part, that a petitioner would have pleaded guilty even if advised of immigration consequences).

Third, Sandoval had a significant incentive to plead guilty. As part of the plea deal, the government agreed to dismiss the § 841 count in the Superseding Indictment. Plea Agreement 1. The statutory minimum period of incarceration for a violation of § 841 is ten years.[8] *See* 21 U.S.C. § 841(b) (2012). Additionally, by pleading guilty, Sandoval received a three-point deduction for acceptance of responsibility pursuant to Sentencing Guidelines §§ 3E1.1(a)-(b). PSI Report ¶ 56. If Sandoval had not pleaded guilty and obtained this three-point deduction, his total offense level would have been forty-three, not forty. The Sentencing Guidelines range for a total offense level of forty-three and a criminal history category of I is a life term of incarceration; the range for a total offense level of forty and a criminal history category of I is 292 to 365 month term of incarceration. *See* Sentencing Table. These increased penalties suggest that Sandoval would have pleaded guilty even if warned of the adverse immigration consequences. *See Santos-Sanchez v. United States*, 5:06-CV-153, 2011 WL 3793691, at *12 (S.D. Tex. Aug. 24, 2011) (finding the risk of a harsher punishment at trial a reason that a petitioner would have pleaded guilty even if advised of immigration consequences).

Fourth, even if defense counsel was deficient in admonishing Sandoval about immigration consequences, the Court likely cured this deficiency with its own admonition. *Compare Zapata-Banda*, 2011 WL 1113586, at *12 (surveying decisions and finding that a court admonishment is a factor to consider when deciding whether a petitioner would have pleaded guilty even if advised of immigration consequences), *with Marroquin v. United States*, 480 F. App'x 294, 297-301 (5th Cir. 2012) (Dennis, J., concurring) (noting that a court's admonishment

---

[8] This additional sentence could have significantly increased Sandoval's total sentence if it ran consecutively with Sandoval's sentence for violating § 846.

is not a "remedy" for counsel's failure to warn of immigration consequences).  At the plea

hearing, the Court asked Sandoval if he understood that if he were not a citizen of the United

States that a "plea of guilty here today may result in you being deported, excluded, or denied

naturalization under our laws."  Plea Tr. 6:16-18.  Sandoval responded "[y]es, Your Honor."  *Id*.

at 6:19.  Thus Sandoval was advised of the immigration consequences of his guilty plea.

For all these reasons, it is reasonably likely that if defense counsel had informed

Sandoval about the possibility of adverse immigration consequences, Sandoval would still have

pleaded guilty.  Therefore, Sandoval has not demonstrated prejudice.  *See Padilla*, 130 S. Ct. at

1482; *Zapata-Banda*, 2011 WL 1113586, at *9-12.  As such, defense counsel did not render

ineffective assistance.  *See id*.  Accordingly, Sandoval is not entitled to relief under § 2255 for

this claim.

### 8.  Reasonableness of sentence

Sandoval next argues that his sentence is unreasonably harsh.  *See* Mem. 8-9.  He argues

that the Court failed to take into account the role of his co-conspirators in fashioning its sentence.

*See id*.  Sandoval claims that he was unaware of co-conspirators' roles in the conspiracy.  *See id*.

at 8.  As a result, Sandoval argues that he should only be held responsible for the 4.3 kilograms

of methamphetamine that he personally sold to law enforcement agents.  *See id*.  Sandoval also

argues that he received a harsher sentence than others involved in the conspiracy, despite playing

a lesser role.  *See id*. at 9.

This argument is factually incorrect.  First, as noted above, Sandoval was sentenced only

for the 4.3 kilograms of methamphetamine that he sold and nothing more.  *See* Plea Tr. 19:7-20;

PSI Report ¶ 42.  Second, as noted above, even if Sandoval were held responsible for an amount

greater than 4.3 kilograms, his base offense level would not have been affected. *See* U.S.S.G. § 2D1.1(1).

Additionally, this argument is not cognizable under § 2255. Here, Sandoval is arguing that his sentence is unfair, especially in light of the sentences that other co-conspirators received. *See* Mem. 9. Apart from briefly mentioning the plea agreement again, Sandoval never correlates the unfairness of his sentence to the assistance of counsel or any other cognizable argument under § 2255. *See id*. at 8-9. Instead, he is simply arguing that the duration of his sentence— 292 months, which is within the Sentencing Guidelines—is, by itself, unfair and overly harsh. *See id*. at 9; Sentencing Table (criminal history category I and offense level 40). But the fact that a sentence within the Sentencing Guidelines was imposed is, by itself, not cognizable under § 2255. *See, e.g.*, *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) ("A district court's calculation under or application of the [S]entencing [G]uidelines standing alone is not the type of error cognizable under section 2255."). Moreover, the United States Court of Appeals for the Fifth Circuit has held that "a sentence within a properly calculated [Sentencing] Guideline[s] range is presumptively reasonable." *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006). For these reasons, Sandoval cannot use § 2255 to challenge the fairness and length of his sentence.

Finally, by the terms of the Plea Agreement, Sandoval is barred from raising this argument. By accepting the Plea Agreement, Sandoval waived his right to appeal his sentence, on either direct or collateral review, if the sentence was authorized by statute. *See Plea Agreement* 4-5. Such a waiver is permissible if it was knowing and voluntary. *See United States v. White,* 307 F.3d 336, 341-44 (5th Cir. 2002). Here, Sandoval's sentence was authorized by

statute and Sandoval does not argue that his waiver was not knowing or voluntary. *See* 28 U.S.C. § 846 (2012). Indeed, he stated in open court that his waiver was voluntary. Plea Tr. 5:3-5. Therefore, he cannot raise this argument.

For these reasons, Sandoval's claim that his sentence is unreasonable cannot be made under § 2255.

### 9. Type of methamphetamine

Lastly, Sandoval argues that the Court failed to articulate what type of methamphetamine he sold to law enforcement agents. Mem. 3. Sandoval claims that the type of methamphetamine is a determinative factor in sentencing. *Id.* To support this argument, Sandoval cites to *United States v. Ramsdale*, an Eleventh Circuit case that found a district court committed error when it failed to clarify if it was sentencing a defendant based upon d-methamphetamine or l-methamphetamine. 61 F.3d 825, 830-31 (11th Cir. 1995).

But this argument is factually and legally incorrect. The plea agreement identified the 4.3 kilograms that Sandoval sold to law enforcement agents as "d-methamphetamine." Plea Agreement 18. The PSI Report also noted that Sandoval sold "d-methamphetamine." PSI Report ¶ 42. Regardless, the distinction for purposes of sentencing, between d-methamphetamine and l-methamphetamine, was abolished in 1995 by amendment 518 to the Sentencing Guidelines. *See* U.S.S.G. App. C, amendment 518 ("Amendment 518"). Specifically, Amendment 518 states that it "deletes the distinction between d- and l-methamphetamine in the Drug Equivalency Tables . . . . Under this amendment, all forms of methamphetamine are treated alike, thereby simplifying guideline application." *Id.* Therefore, Sandoval has not established that either "(1) his sentence was imposed in violation of the

Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."  *See Seyfert*, 67 F.3d at 546.  Accordingly, this argument cannot be raised under § 2255.

## III.  EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the petitioner is not entitled to relief.  *See* 28 U.S.C. § 2255(b); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the petitioner's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself); *United States v. Drummond*, 910 F.2d 284,285 (5th Cir. 1990) ("[W]e now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").  The record in this case is adequate to dispose fully and fairly of Sandoval's claims.  The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## IV.  CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(B).  Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.  *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).  In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review

solely to those issues on which a certificate of appealability is granted.  *See* 28 U.S.C. §

2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also*

*Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue

basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150

F.3d 429, 431 &  n.1 (5th Cir. 1998) (explaining that the Fifth Circuit may address an issue not

certified by the district court if the petitioner makes (1) an explicit request and (2) a substantial

showing of the denial of a constitutional right).

 A certificate of appealability "may issue . . . only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In cases where a

district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United*

*States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability

determination in the context of § 2255 proceedings).  To warrant a grant of the certificate as to

claims that the district court rejects solely on procedural grounds, the movant must show both

that "jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.  Here, Sandoval's

Motion fails because he has not made a substantial showing of the denial of a constitutional

right.  Accordingly, the Court finds that it should deny Sandoval a certificate of appealability.

**V.      CONCLUSION**

For the foregoing reasons, Petitioner Sandoval's Motion, ECF No. 222, is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Sandoval's civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** Petitioner Sandoval is also **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT.**

**SO ORDERED.**

SIGNED this 25th day of January, 2013.


_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE